**KIRKSVILLE PUBLISHING COMPANY, Appellant,**

v.

**DIVISION OF EMPLOYMENT SECURITY, Respondent.**

No. WD 53293.

Missouri Court of Appeals, Western District.

June 24, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 29, 1997.

As Modified July 29, 1997.

Application to Transfer Denied Sept. 30, 1997.

Randal L. Schultz, Kansas City, for appellant.

Marilyn Gail Green, Mo. Div. of Employment Security, Jefferson City, for respondent.

Before ULRICH, C.J., P.J., and LOWENSTEIN and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

This is an appeal by the Kirksville Publishing Company from the Labor and Industrial Relations Commission's (the Commission) decision affirming the holding of an appeals tribunal that the motor carriers who deliver *The Carthage Press* (the newspaper) are employees of the newspaper and not independent contractors under Missouri Employment Security Law. The newspaper is owned and published by appellant. The issue of whether the carriers were employees or independent contractors arose as a result of an audit of appellant by the Missouri Division of Employment Security (DES). The audit was performed to determine whether the newspaper was liable for past-due unemployment withholding taxes for its motor carriers as employees. In its sole point on appeal, appellant alleges that the Commission erred in concluding that the carriers were employees because the record does not support such a conclusion.

We reverse.

### Facts

The appellant owns and publishes a daily newspaper, *The Carthage Press,* in Carthage, Missouri, and has since May of 1993. *The Carthage Press* has been in existence for over 100 years and has a circulation of approximately 5,000 papers. Appellant has approximately eighteen individuals, who both sides agree are employees. These employees are engaged in reporting, advertising, sales, composition and clerical work. Appellant uses the mail, vendors, junior carriers and motor carriers to deliver the paper. The appeals referee set forth the majority of the remaining key facts in its findings of fact:

It was the duty of the motor carriers to deliver the newspaper known as *The Carthage Press* to the appellant's customers. The appellant supplied the carriers with a customer list. Generally, the carriers reported to the appellant's place of business each day between the hours of 12:30 p.m. and 2:30 p.m., in order to pick up the newspapers which they were to deliver that day. The newspapers were delivered on a daily basis, Monday through Saturday. There is no Sunday newspaper. The motor carriers were an integral part of the appellant's business, which involves the delivery of the newspapers.

The motor carriers use their own personal vehicles to deliver the newspapers. During the first day or so, the carriers rode with the circulation manager, in order that they might become familiar with the route. After that, the carriers serviced the route on their own. The appellant did not require that the newspapers be delivered at a specific time. However, the appellant did request that the carriers have the

newspapers delivered by 5:00 p.m. The appellant did not supervise the carriers' work with regard to the newspaper route. The carriers were free to substitute other individuals in their places at any time without prior approval of the appellant. If helpers or assistants were used, it was not likely that the appellant would become aware of this, since the appellant did not have to approve the assistants.

The appellant did not require that the carriers work full-time for the appellant. They were required to work as long as it took to complete the route. The carriers did not perform delivery services at the appellant's place of business. The only work that was performed at the appellant's place of business was picking up the bundles of newspapers shortly after noon each day.

The appellant did not provide the carriers with any supplies such as plastic bags or rubber bands used to secure the newspapers for delivery. The carriers provided their own vehicles, which they used in the delivery of the newspapers. The appellant, of course, provided the newspapers. The appellant did provide one form to the carriers, i.e., a form which allowed new customers to sign up for a subscription to the newspaper. This form could be submitted to the appellant by the driver. No other reports were required to be submitted by the carriers.

In consideration for the delivery services provided by the carriers, the appellant compensated the carriers, based on the difference between what the appellant sold the newspaper to the carrier for and what the carrier collected from the subscriber. From the remuneration received by the carriers, there were no deductions by way of federal, state, or local taxes.

The appellant did not furnish any business-related expenses to the carriers, except for a transportation allowance which varied, depending upon what was negotiated between the carriers and the appellant. No tools, materials, equipment, or supplies were provided to the carriers, with the exception of the newspapers themselves.

The carriers were free to work for other organizations at the same time that they were associated with the appellant. The appellant's witness was not certain whether any of the individuals engaged in their own businesses at the time that they were associated with the appellant. The appellant's publisher indicated that he was aware of one situation where a carrier also worked for another newspaper known as *The Joplin Globe*. There was a written contractual arrangement between the carriers and the appellant. That contract provided that both the carrier and the appellant may terminate the relationship upon furnishing a 30–day written notice.

The Division of Employment Security determined that beginning April 1, 1993, J. Shaner, G. Smith, T. Taber and all others engaged as motor carriers, for the years 1993, 1994, and 1995, performed services for "wages" in "employment" by appellant, within the meaning of those terms as defined in §§ 288.034 and 288.036.[1] As such, appellant was liable for past-due withholding taxes for the newspaper carriers. Appellant appealed this determination to the appeals tribunal. The appeals tribunal affirmed the decision. Appellant filed an application for review with the Labor and Industrial Relations Commission, contending that there was no evidence to support the appeals referee's decision. The Commission affirmed, adopting the decision of the appeals referee. This appeal followed.

### Standard of Review

Our appellate review of the Industrial Relations Commission's decision is limited. *Forms World, Inc. v. Labor and Indus. Rel. Comm'n,* 935 S.W.2d 680, 683 (Mo.App.1996). The Commission's findings of fact, if supported by competent and substantial evidence and absent fraud, are conclusive. § 288.210 RSMo Supp.1996. We may disturb the decision of the Commission only if we find that "the commission acted without or in excess of its powers; ... the decision was procured by fraud; ... the facts found by the commission do not support the award;

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

or ... there was no sufficient competent evidence in the record to warrant the making of the award." *Id.*

■ In *Travelers Equities Sales, Inc. v. Division of Employment Sec.*, 927 S.W.2d 912, 917 (Mo.App.1996), this court found that the review process for worker's compensation cases, articulated in *Davis v. Research Medical Center*, 903 S.W.2d 557 (Mo.App. 1995), applies to employment security decisions as well. In *Davis*, this court stated the following with regard to our review of issues of law:

> Findings and awards of the Commission which are clearly the interpretation or application of the law, as distinguished from a determination of facts, are not binding on the court and fall within the court's province of independent review and correction where erroneous. And, where the findings of ultimate fact are reached not by a process of natural reasoning from the facts alone, but rather by application of law, it is a conclusion of law and subject to reversal by the court.

*Id.* at 571. Therefore, when an issue involves the application of the law to the facts, the appellate court does not defer to the Commission's decision. *Travelers*, 927 S.W.2d at 917.

■ When an issue involves the determination of whether the Commission's findings are supported by sufficient competent evidence, we follow a two-step process of review:

> In the first step, the court examines the whole record, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award, to determine if the record contains sufficient competent and substantial evidence to support the award. If not, the Commission's award must be reversed. If there is competent and substantial evidence supporting the award, the court moves to the second step, where it views the evidence in the light most favorable to the award, but must consider all evidence in the record, including that which opposes or is unfavorable to the award, take account of the overall effect of all of the evidence, and

> determine whether the award is against the overwhelming weight of the evidence.

*Davis*, 903 S.W.2d at 571.

There is little dispute regarding the facts of this case. The controversy lies in the conclusions drawn by the appeals referee from the facts found and which were adopted by the Commission. Because the significance of the facts can be viewed in different ways, this case "involves primarily the application of the law to the facts." *Travelers*, 927 S.W.2d at 917.

## I.

■ In its sole point on appeal, appellant claims that the Commission erred in finding the motor carriers to be employees, rather than independent contractors, because the facts found by the Commission do not support this conclusion, and the carriers are, in fact, independent contractors. We agree.

Although not binding, we first note that the intent of the parties, as expressed in their written agreement, was for the carriers to be considered independent contractors, rather than employees. In this respect, the "Motor Route Agreement" provides: "The Parties' intent is that an Independent Contractor relationship will be created by this contract." Further, the agreement addresses appellant's right to control the result it desired under the agreement, the timely delivery of the newspaper, providing that: "work by Contractor hereunder shall thus be subject to Publisher's general right of inspection and supervision to secure satisfactory completion." The agreement does not specify the method or manner in which the paper was expected to be delivered.

Because the contractual intent of the parties that the carriers were to be treated as independent contractors is not controlling, we must look to appellant's "right of control" to determine whether the carriers were employees or independent contractors for purposes of employment withholding taxes. *Id.* at 921. The test is set forth in § 288.034.5:

> Service performed by an individual for remuneration shall be deemed to be employment subject to this law unless it is shown to the satisfaction of the division that such

services were performed by an independent contractor. In determining the existence of the independent contractor relationship, the common law of agency right to control shall be applied. The common law of agency right to control test shall include but not be limited to: If the alleged employer retains the right to control the manner and means by which the results are to be accomplished, the individual who performs the service is an employee. If only the results are controlled, the individual performing the service is an independent contractor.

To apply this statute, 8 C.S.R. 10–4.150(2) provides as follows:

In order to interpret section 288.034.5, RSMo, effective June 30, 1989, the division shall apply the common law rules applicable in determining the employer-employee relationship under 26 U.S.C., Section 3306(i). In applying the provisions of 26 U.S.C., Section 3306(i), the division shall consider the case law, Internal Revenue Service regulations and Internal Revenue Service letter rulings interpreting and applying that subsection.

Pursuant to 26 U.S.C. § 3306(i), "employee" is defined generally as any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee.

The Internal Revenue Service (IRS) has identified twenty factors in Revenue Ruling 87–41 to consider in determining whether sufficient indicia of control exist to indicate an employer-employee relationship. These factors are: (1) instructions; (2) training; (3) integration; (4) services rendered personally; (5) hiring, supervising, and paying assistants; (6) continuing relationship; (7) set hours of work; (8) full time required; (9) doing work on employer's premises; (10) order or sequence set; (11) oral or written reports; (12) payment by hour, week, month; (13) payment of business and/or traveling expenses; (14) furnishing of tools and materials; (15) significant investment; (16) realization of profit or loss; (17) working for more than one firm at a time; (18) making service available to general public; (19) right to discharge; and (20) right to terminate. Rev. Rul. 87–41, 1987–1 C.B. 296.

The Commission here based its conclusion that the motor carriers were employees upon the following five factual findings: (1) appellant furnished a customer list to the carriers from which the newspapers were to be delivered; (2) appellant instructed each of the carriers regarding the delivery of the newspaper and they were informed that it was expected that they would deliver the newspapers by 5:00 p.m. each evening; (3) the motor carriers were an integral part of the business, since the delivery of the newspapers was essential to appellant's business; (4) appellant provided a transportation allowance to each of the carriers that was indirectly a payment of business expenses; and (5) the employment contract required a thirty-day notice of termination. Although the Commission did not designate which of the twenty factors correlated with its five findings of ultimate fact, it is apparent that findings (1) and (2) correspond with the instruction and training factors; finding (3) relates to the integration factor; finding (4) correlates with the payment of business and/or traveling expenses factor; and finding (5) corresponds to the right to discharge and right to terminate factors. Of the twenty IRS factors, we will discuss only those related to the Commission's findings, in that the other factors not discussed are not relevant in determining whether the motor carriers were employees or independent contractors.

In our review of the twenty factors, it must be remembered that no single factor is controlling, *Edward Lowe Ind., Inc. v. Div. of Emp. Sec.*, 865 S.W.2d 855, 863 (Mo.App. 1993), and that our determination cannot be based merely on a numerical count of factors. *Travelers*, 927 S.W.2d at 925. As we held in *Travelers*, "some factors are of greater weight than others, and the bedrock is still the common law agency test of the right to control the manner and means of performance." *Id.* Our primary focus is the factors that are particularly significant in the context of the industry. *Id.* Thus, even assuming, *arguendo*, that the Commission correctly found from the evidence that some factors were met, these particular factors are less

significant to the overall determination if they do not substantially relate to the overarching question of the right to control the result.

### A. Instructions and Training Factors

The "instructions" and "training" factors are stated as follows:

1. INSTRUCTIONS. A worker who is required to comply with other persons' instructions about when, where, and how he or she is to work is ordinarily an employee. This control factor is present if the person or persons for whom the services are performed have the right to require compliance with instructions.

2. TRAINING. Training a worker by requiring an experienced employee to work with the worker, by corresponding with the worker, by requiring the worker to attend meetings, or by using other methods, indicates that the person or persons for whom the services are performed want the services performed in a particular method or manner.

Rev. Rul. 87–41, 1987–1 C.B. 296; *Travelers*, 927 S.W.2d at 921–22.

■ With respect to the "instructions" factor, the right to control is manifested in control over the "when, where and how" work is completed. *See, e.g., Travelers*, 927 S.W.2d at 921 (stating that no evidence was shown concerning the "when, where and how" sales contracts, hours and sales territory were controlled); *Edward Lowe*, 865 S.W.2d at 860 (detailing instructions given to each worker and the company's ability to fire workers for failure to obey rules and follow instructions).

Here, as to the "when" component of the instructions given by appellant, the Commission found that the motor carriers were informed that appellant expected them to deliver the newspapers by 5:00 p.m. each day. However, because it is axiomatic that "news" is not "news" unless timely, the fact that the newspaper carriers were expected to deliver the papers by 5:00 p.m. is not evidence of instruction as to "when" the paper was to be delivered, but is an inherent part of the result desired by appellant, which is the delivery of the news in a timely fashion. As to delivery, there was evidence that appellant

would be compelled to talk to the carrier if subscribers complained that they were not receiving their papers until well after that time. However, appellant did not specify when the paper was to be delivered, as long as it was delivered by 5:00 p.m. Thus, the fact that appellant wanted its papers delivered by 5:00 p.m. indicates control over the result of the carriers' work, not over the manner in which the carriers were to accomplish the work.

As to "where" carriers were to deliver the newspaper, the Commission found that appellant instructed them by providing a route list. The evidence indicates that appellant gave new motor carriers a list of the customers on his or her route existing as of the day the former motor carrier on the route quit. However, the new motor carrier was expected to use his or her own marketing skills in expanding the route. In addition, existing customers could choose to drop their service. Thus, the list could change the day after appellant gave it to the new motor carrier.

As to "how" the newspaper was to be delivered, the Commission found that the circulation manager either rode with the carriers on the first day to show them the routes or gave them an audiotape concerning the route. However, the carrier was free to change the sequence of the route. Thus, the carriers were solely responsible for the methodology and actual route they followed when delivering the papers.

■ The "training" factor refers to an experienced worker giving guidance to new workers to demonstrate how the instructions, discussed *supra*, must be followed. *See, e.g., id.* at 860 (stating that the instructions were simple enough that no special training was needed to follow them). Here, there was no evidence that the carriers were required to attend any type of training meetings or take any special courses. The instructions appellant provided—that the paper must be delivered no later than 5:00 p.m., the houses included on the carriers' routes, and an optional route sequence—did not require any training.

In summary as to these factors, we find that the Commission's determination that ap-

pellant instructed or trained the carriers regarding the delivery of the paper is not supported by the evidence. Any instruction or training that the appellant did provide to the motor carriers was *de minimis*, or went to the result, timely delivery of the paper, and was not evidence of appellant's right to control the manner and means of delivery by the motor carriers.

### B. Integration

■ The "integration" factor is stated as follows:

3. INTEGRATION. Integration of the worker's services into the business operations generally shows that the worker is subject to direction and control. When the success or continuation of a business depends to an appreciable degree upon the performance of certain services, the workers who perform those services must necessarily be subject to a certain amount of control by the owner of the business.

Rev. Rul. 87–41, 1987–1 C.B. 296; *Travelers*, 927 S.W.2d at 922. The "integration" factor refers to whether a business could continue without the contribution of the workers in question, as a highly integrated worker is more likely to be subject to the business' control. *See, e.g., id.* (stating that although the workers were essential to the continuation of the business, they were not integrated into the general operations of the business).

Although appellant admitted in testimony that it considered the delivery of the newspaper to be separate and distinct from its role as publisher, we find that the newspaper carriers play a role in appellant's business of selling newspapers. Appellant testified that fifty to sixty percent of appellant's newspapers are distributed by mail, vendors and junior carriers, but up to fifty percent of its papers are distributed by motor newspaper carriers. Thus, the motor carriers are not the sole method of distribution of the papers, or, in other words, appellant does not exclusively depend on them to conduct its business. Independent contractors are just as capable of providing the services of the carriers as are employees. As such, it is not imperative that the motor carriers be subject to significant control by appellant to insure

its business is conducted, which cuts against a finding that the carriers' services were "integrated" into the business operations of appellant.

### C. Payment of Business and/or Traveling Expenses

■ The "payment of business and/or traveling expenses" factor is stated as follows:

13. PAYMENT OF BUSINESS AND/OR TRAVELING EXPENSES. If the person or persons for whom the services are performed ordinarily pay the worker's business and/or traveling expenses, the worker is ordinarily an employee. An employer, to be able to control expenses, generally retains the right to regulate and direct the worker's business activities.

Rev. Rul. 87–41, 1987–1 C.B. 296; *Travelers*, 927 S.W.2d at 923. The "payment of expenses" factor relates to expenses incurred in working for an individual or company, such as traveling from work to appointments or home. *See, e.g., id.* at 923–24 (finding that workers generally paid their own expenses to appointments); *Edward Lowe*, 865 S.W.2d at 862 (stating that the worker's expenses to and from home were not reimbursed, as is typical with most companies). Control of expenses, as well as reimbursement, indicates the right to regulate business activities. *Travelers*, 927 S.W.2d at 923.

The Commission's conclusion that appellant's payment to the motor carriers of a "transportation allowance" amounted to the payment of business expenses is incorrect. The evidence was that appellant offers its carriers a one-time payment, which it calls a "transportation allowance," to entice the carrier to take the route. The amount of the allowance is negotiated between the appellant and the carrier, and is not based on any actual mileage figures or travel expenses, as would be the case with employees. The allowance is a one-time, lump-sum payment given to the carriers up front. Thus, we find the "travel allowance" does not constitute payment of business or travel expenses and does not indicate a right of control by appel-

lant over the manner and means of the carrier's work.

### D. Right to Discharge and Right to Terminate

 The "right to discharge" and "right to terminate" factors are stated as follows:

> 19. RIGHT TO DISCHARGE. The right to discharge a worker is a factor indicating that the worker is an employee and the person possessing the right is an employer. An employer exercises control through the threat of dismissal, which causes the worker to obey the employer's instructions. An independent contractor, on the other hand, cannot be fired so long as the independent contractor produces a result that meets the contract specifications.

> 20. RIGHT TO TERMINATE. If the worker has the right to end his or her relationship with the person for whom the services are performed at any time he or she wishes without incurring liability, that factor indicates an employer-employee relationship.

Rev. Rul. 87–41, 1987–1 C.B. 296; *Travelers,* 927 S.W.2d at 925. The right to "discharge" and "terminate" factors both relate to the ending of a work relationship, with the right to discharge being the employer's right to fire an employee at-will, and the right to terminate being the employee's right to quit without any liability. The ability to discharge a worker at-will suggests that the worker is an employee and is bound to follow the employer's instructions through threat of dismissal. *See, e.g., id.* (stating that the company could terminate the worker's employment at any time, without respect to projects or time periods). Similarly, if a worker can unilaterally end the working relationship at any time without incurring liability, the worker is an employee. *See, e.g., Edward Lowe,* 865 S.W.2d at 862–63 (stating that the worker could drop out of the project at any time, but if she did so of her own accord, or failed to follow directions, she would not be paid).

Here, the parties' agreement required a written, thirty-day notice before either party could cancel it without cause, to wit:

> Either party may cancel this contract, at any time before or after termination of an initial or renewal term, on 30 days written notice with or without cause. Subject to the foregoing, if this contract is not canceled, then this contract shall remain in force for a period of one year from the date hereof, and shall automatically renew for a one year term from year to year thereafter.

The agreement also provided that it could be terminated by appellant with one-day written notice to the carrier, but only in the event the carrier did not comply with the agreement's requirements.

As to the "discharge" factor, we find that appellant could not unilaterally fire a motor carrier. Appellant could only cancel the agreement on thirty-day written notice or on one-day written notice, provided the carrier failed to meet the requirements of the contract. Other than delivering the newspaper in a timely fashion, as discussed, *supra,* appellant did not provide the carriers with any specific instructions that had to be followed under threat of dismissal. As such, we find the "discharge" factor reflecting a right to control is not sufficiently present here.

Similarly, evidence as to the right-to-terminate factor does not establish that appellant had a right to control sufficient to make the carriers employees. The carriers here could not terminate their working relationship with appellant at any time, as they were required to give a thirty-day written notice. And, although there might be some debate as to what liability a carrier would incur if he or she terminated without giving the proper notice, it is conceivable that the appellant could sue for breach of contract and establish at least some nominal damages.

### Summary

After examining the Commission's findings in light of the IRS factors enumerated, we find that such findings, even if supported by substantial and competent evidence, do not support the Commission's conclusion that the carriers were employees. Even viewing the

Commission's findings in their most favorable light, the evidence supporting the IRS factors suggests that the carriers were independent contractors. Fifteen of the twenty factors were, in effect, not found by the Commission in concluding the carriers were employees. And, as to the factors addressed by the Commission's findings, we find that appellant did not control the means and manner of delivery of the paper, but only the overall result of "acceptable service," or timely delivery of the paper. Thus, we find the Commission erred as a matter of law by making the ultimate fact conclusion that the evidence supported a determination that the motor carriers in question were employees. § 288.210 RSMo Supp.1996; *Travelers*, 927 S.W.2d at 917.

### Conclusion

The decision of the Commission finding that the motor newspaper carriers were employees is reversed.

All concur.