NATIONAL RESORT MART, INC., Appellant,

v.

Christina HITCHCOCK, Defendant,

Division of Employment Security, Respondent.

No. WD 60417.

Missouri Court of Appeals, Western District.

June 28, 2002.

Larry G. Luna, Branson, Jeffrey Siegel, Co-Counsel, Kansas City, for Appellant.

Ronald J. Miller, Jefferson City, for respondent.

Before JOSEPH M. ELLIS, Presiding Judge, EDWIN H. SMITH, Judge and VICTOR C. HOWARD, Judge.

JOSEPH M. ELLIS, Judge.

National Resort Mart, Inc., ("National Resort") appeals from the order of the Labor and Industrial Relations Commission ("the Commission") determining that Christina Hitchcock was an employee, not an independent contractor, and was, therefore, entitled to receive unemployment benefits.

National Resort is a franchise of Century 21 that lists time-share interests for sale. Christina Hitchcock was employed by National Resort's office in Kimberling City, Missouri. She was hired as an agent/telemarketer to obtain listings for the company. The Kimberling City office was staffed by another agent, a broker/manager, and a secretary.

Hitchcock worked for the company for about a year, from February 1999 until March 2000. Her job was to contact individuals who wanted to sell time-share interests and convince them to list with the company. Hitchcock received a commission for each listing she obtained, but did not receive a regular salary or hourly wage. She earned a commission regardless of whether the listed time-share actually sold. A portion of Hitchcock's commission check went to pay a franchisee fee to Century 21.

The company provided Hitchcock with names of potential clients, or "leads," that she was expected to contact by telephone. She was generally given a worksheet that provided the individual's name, phone number, and other contact information. Hitchcock used the worksheets to contact the prospective clients and try to convince them to list their time-share with the company. If the individual agreed to a listing, Hitchcock would record certain information about the property on the worksheet and obtain the client's credit card number for payment. She would return the worksheets to the secretary after completing a call, and the worksheets would be forwarded to the company's contract department. If an individual did not agree to list with the company, Hitchcock would make a notation on the worksheet and return it to the secretary.

The office was open from 9 a.m. to 5 p.m., and while Hitchcock was permitted flexibility in her schedule, she was required to call the company's main office in Hot Springs, Arkansas, if she was going to leave early for personal errands. The company required notice so that it would know that calls should not be transferred to her office. Hitchcock was also required to call the secretary if she was going to be late. Hitchcock completed most of her work at the office, but did briefly install a business phone line into her home so that she could contact clients that were not available before 5 p.m. She later had the phone line disconnected because she was not generating enough work at home to justify the expense.

Hitchcock was terminated from her job for lack of work. On December 19, 2000, she filed a claim for unemployment benefits. On January 31, 2001, the Division of Employment Security ("the Division") mailed a notice to National Resort stating that Hitchcock was entitled to wage credits, for the purpose of determining her claim for benefits, in the following amounts: $7,391.06 for the quarter ending September 30, 1999; $10,040.04 for the quarter ending December 31, 1999; and $7,237.20 for the quarter ending March 31, 2000. The Division also mailed a notice stating that Hitchcock was a National Re-

sort employee from February 10, 1999, through June 30, 1999, and that National Resort had failed to establish that Hitchcock was an independent contractor.

National Resort notified the Division that it intended to appeal both decisions. On May 10, 2001, there was a hearing by telephone conference on both issues before an appeals referee of the Division. On May 22, 2001, the appeals tribunal affirmed both issues in two separate written decisions. On June 29, 2001, the Commission issued two orders affirming and adopting both decisions. This appeal follows.

In its only point on appeal, National Resort argues that the Commission erred in determining that Hitchcock was not an independent contractor and was, therefore, entitled to unemployment benefits. National Resort claims that the Commission misapplied the law in determining that Hitchcock was an employee because Hitchcock was not under the control of National Mart, as defined by pertinent Missouri law.

Section 288.210 sets forth our standard of review:

The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for hearing, or set aside the decision of the commission on the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

*Kansas City Power & Light Co. v. Searcy*, 28 S.W.3d 891, 894 (Mo.App. W.D.2000) (quoting § 288.210).

The Commission's findings of fact are conclusive if supported by competent and substantial evidence and absent fraud. *Mo. Shelfco, Inc. v. Labor and Indus. Relations Comm'n*, 849 S.W.2d 245, 248 (Mo. App. W.D.1993). We follow a two-step inquiry to determine whether the Commission's findings of fact are supported by competent evidence. *Asaro v. Div. of Employment Sec.*, 32 S.W.3d 623, 626 (Mo. App. W.D.2000); *Kansas City Power & Light Co.*, 28 S.W.3d at 894.

In the first step, the court examines the whole record, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the [decisions], to determine if the record contains sufficient competent and substantial evidence to support the award. If not, the Commission's award must be reversed. If there is competent and substantial evidence supporting the award, the court moves to the second step, where it views the evidence in the light most favorable to the award, but must consider all evidence in the record, including that which opposes or is unfavorable to the award, take account of the overall effect of the evidence, and determine whether the award is against the overwhelming weight of the evidence.

*Asaro*, 32 S.W.3d at 626 (*quoting Forms World, Inc. v. Labor & Indus. Relations Comm'n*, 935 S.W.2d 680, 684 (Mo.App. W.D.1996)).

While we defer to the Commission's findings of fact, our review of the application of the law to the facts is de novo. *Stover Delivery Sys., Inc. v. Div. of Employment Sec.*, 11 S.W.3d 685, 688 (Mo.

App. W.D.1999). When the case involves primarily a question of the application of the law to the facts, we give no deference to the Commission's conclusions. *Id.* National Resort argues that the Division misapplied the law; thus, our review of the application of the law to the facts is de novo.

The issue in this case is governed by Chapter 288, which requires Missouri employers to make unemployment tax contributions for their employees. *Id.* Section 288.034.1[1] defines "employment" as follows:

> "**Employment**" means service, including service in interstate commerce, performed for wages or under any contract of hire, written or oral, express or implied, and notwithstanding any other provisions of this section, service with respect to which a tax is required to be paid under any federal unemployment tax law imposing a tax against which credit may be taken for contributions required to be paid into a state unemployment fund or which, as a condition for full tax credit against the tax imposed by the Federal Unemployment Tax Act, is required to be covered under this law.

National Resort first argues that Hitchcock is excluded from the definition of employment pursuant to § 288.034.12, which states that certain types of work are not considered employment. Specifically, National Resort notes that § 288.034.12(16) excludes certain real estate agents from the definition of employment when they meet the following criteria:

> Services performed by a licensed real estate salesperson or licensed real estate broker if at least eighty percent of the remuneration, whether or not paid in cash, for the services performed rather than to the number of hours worked is directly related to sales performed pursuant to a written contract between such individual and the person for whom the services are performed and such contract provides that the individual will not be treated as an employee with respect to such services for federal tax purposes.

■ National Resort claims that Hitchcock's services are similar to a real estate agent and that the exception should apply to her. The appeals tribunal rejected this argument, noting that subsection sixteen only applies to licensed real estate salespersons or brokers and that Hitchcock does not fit either category. The record supports this finding; National Resort's representative testified that a license is not required in Missouri to list or sell time-shares, and there was no evidence even suggesting that Hitchcock was, or needed to be, licensed.

National Resort next contends that Hitchcock was an independent contractor. Section 288.034.5 sets forth the test for determining whether an individual is an employee or an independent contractor:

> Service performed by an individual for remuneration shall be deemed to be employment subject to this law unless it is shown to the satisfaction of the division that such services were performed by an independent contractor. In determining the existence of the independent contractor relationship, the common law of agency right to control shall be applied. The common law of agency right to control test shall include but not be limited to: if the alleged employer retains the right to control the manner and means by which the results are to be accomplished, the individual who performs the service is an employee. If only the re-

---

**1.** All statutory references are to RSMo Cum. Supp.1998, unless otherwise noted.

sults are controlled, the individual performing the service is an independent contractor.

In determining whether a worker is an employee or an independent contractor, 8 C.S.R. 10–4.150(1) requires that the Division shall apply " 'the common law rules applicable in determining the employer-employee relationship under 26 U.S.C., Section 3306(i).' "[2] *Stover Delivery Systems, Inc.,* 11 S.W.3d at 691 (quoting 8 C.S.R. 10–4150(1)). " 'In applying the provisions of 26 U.S.C., Section 3306(i) the division shall consider the case law, Internal Revenue Service regulations and Internal Revenue Service letter rulings interpreting and applying that subsection.' " *Id.* (quoting 8 C.S.R. 10–4150(1)). The Internal Revenue Service ("I.R.S.") has identified twenty factors to consider in determining whether to classify an individual as an employee or an independent contractor. *Id.* "Missouri courts have consistently applied the twenty-factor test set forth in *I.R.S. Revenue Ruling 87–41,* in determining whether an employment or independent contractor relationship exists." *Fritts v. Div. of Employment Sec.,* 11 S.W.3d 721, 724 (Mo.App. W.D.1999) (citing *Travelers Equities Sales, Inc. v. Div. of Employment Sec.,* 927 S.W.2d 912, 921– 25 (Mo.App. W.D.1996); *Kirksville Publ'g Co. v. Div. of Employment Sec.,* 950 S.W.2d 891, 896–99 (Mo.App. W.D.1997);

*Edward Lowe Indus., Inc. v. Mo. Div. of Employment Sec.,* 865 S.W.2d 855, 860–63 (Mo.App. S.D.1993); *Veterans Servs., Inc. v. Labor & Indus. Relations Comm'n,* 861 S.W.2d 781, 786–90 (Mo.App. W.D.1993); *Fritts v. Williams,* 992 S.W.2d 375, 380–85 (Mo.App. S.D.1999)).

National Resort, however, does not analyze the case according to the twenty-factor test. Instead, the company claims in its brief that real estate agents are "markedly different" from other occupations that are usually found to be independent contractors. It contends that real estate agents typically are integrated into the employer's business despite their status as independent contractors. Therefore, the company asserts that "fundamental components of the independent contractor analysis are inapplicable in the real estate context." National Resort cites no authority for this proposition and we have found none. The argument is without merit.

While National Resort fails to apply the twenty-factor test, it cites two Revenue Rulings issued by the I.R.S. to support its argument that Hitchcock is an independent contractor.[3] Rev. Rul. 74–333 contemplates two situations involving telemarketers and applies the common law "right to control" test and Employment Tax Regulations promulgated by the I.R.S.

**2.** " 'Section 3306(i) of Chapter 26 of the United States Code defines "employee" generally as an individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of employee.' " *Stover Delivery Sys., Inc.,* 11 S.W.3d at 691 (quoting *Travelers Equities Sales, Inc. v. Div. of Employment Sec.,* 927 S.W.2d 912, 920 (Mo.App. W.D.1996)).

**3.** To further support its argument, National Resort cites two Internal Revenue Service private letter rulings and a technical advice memorandum. The company cites Priv. Ltr. Rul. 82–51–108 (Sept. 22, 1982) and Priv. Ltr.

Rul. 88–25–097 (March 29, 1988). In addition, the company apparently intended to cite Tech. Adv. Mem. 95–27–009, (Sept. 28, 1984) (National Resort refers to the memorandum as "TAM 952709 (1995)" but the facts paraphrased in National Resort's brief correspond to those in 95–27–009, and we could find no memorandum numbered "952709"). In any event, as stated explicitly in each of the referenced documents, the private letter rulings and technical advice memorandum may not be used or cited as precedent pursuant to I.R.C. § 6110(j)(3).

to determine whether the workers are employees or independent contractors. *Rev. Rule 74–333, 1974–2 C.B. 328.*

Situation One involves a telemarketer who meets the qualifications of a common law employee and works under the following conditions:

> Her duties are to telephone certain individuals and institutions designated by the company and to record the necessary information on an order blank at the time a sale is made. She is furnished office facilities, supplies and a telephone by the company on its premises. There is no prescribed period of training; however, the company does furnish a suggested general conversation and sales talk to be used with the prospective customers. The telephone calls are made at times optional to the solicitor, but she is expected to devote from four to eight hours daily to the performance of these services. Her services are performed under the company's name. She is paid a commission on each sale, is not allowed a drawing account and is not expected to produce a minimum volume of sales. Her services may be terminated at any time.

*Id.*

Situation Two describes a telemarketer who qualifies as an independent contractor under common law rules and works under the following conditions:

> [T]he solicitor is assigned certain pages of the telephone directory. She operates from her own home, performs the services on a part-time basis, without supervision, and pays all the expenses incurred in connection with her selling activities. She does not submit reports, other than sales orders, does not deliver the products sold or collect any payment therefrom, and is not required to devote any certain amount of time to the work, perform any services on the company's premises, or produce a minimum volume of sales. She is paid a commission on each sale she makes and is not allowed a drawing account or advance against anticipated earnings.

*Id.*

National Resort contends that Hitchcock's working arrangement more closely resembles the facts in the second example because Hitchcock was not required to work at the office but chose to do so and, therefore, the company did not have the "right" to control her performance pursuant to § 288.034.5. We disagree.

■ The record reflects that Hitchcock's working conditions were almost identical to the circumstances described in Situation One, where the worker was designated an employee. Much like the worker in example one, who was expected to work between four to eight hours each day, Hitchcock was expected to be available for work between 9 a.m. and 5 p.m. The company controlled who worked at home by requiring that employees have a fax machine and maintain contact with the office throughout the day, in order to obtain "leads." Most workers, including Hitchcock, performed their duties at the office and only occasionally asked to work from home. Moreover, Hitchcock telephoned specific individuals designated by the company, was provided office space and supplies, normally worked forty hours each week, submitted worksheets to be forwarded to the company's contract department, and obtained credit card numbers from clients for payment. Rev. Rul. 74–333 provides no support for National Resort's argument that Hitchcock was an independent contractor.

National Resort also cites Rev. Rul. 75–242 which applies common law rules and Employment Tax Regulations promulgated by the I.R.S. to determine whether tele-

phone solicitors are employees or independent contractors. *Rev. Rul. 75–242, 1975–1 C.B. 321.* In Rev. Rul. 75–242, the I.R.S. determined that telephone solicitors were employees when they received an hourly wage, received company training and required sales scripts, were required to submit daily reports and were expected to work on days and at times specified by the company. *Id.* National Resort claims that because those factors were not present in the instant case, the Division erred in determining that Hitchcock was an employee.

▇▇▇ This Revenue Ruling likewise fails to support National Resort's position. As noted *supra,* Missouri courts apply the twenty-factor test enunciated in Rev. Rul. 87–41 in determining whether an employee or independent contractor relationship exists; we do not base our determination on a few isolated facts, such as those mentioned in Rev. Rul. 75–242. *Fritts,* 11 S.W.3d at 724. In applying the twenty-factor test, no one factor is controlling. *Stover,* 11 S.W.3d at 696. Thus, the fact that Hitchcock was not paid an hourly wage, for instance, is not determinative of her status. We do not base our decision even on a numerical count of the factors. *Travelers Equities Sales Inc.,* 927 S.W.2d at 925. Rather, "the bedrock is still the common law agency test of the right to control the manner and means of performance." *Id.*

To reiterate, National Resort's argument that the Division misapplied the law is without merit. The real estate exception in § 288.034.12(16) does not apply to this case, and Revenue Rulings 74–333 and 75–242 do not support National Resort's claim that Hitchcock was an independent contractor.

Moreover, application of the twenty-factor test to the facts of this case supports the Commission's decision.[4] Analysis of

---

4. In determining that Hitchcock was an employee and not an independent contractor, the Commission made the following determinations in its findings of fact:

National Resort Mart, Inc. (appellant) does business in time share listings and sales. The appellant engaged Christina Hitchcock (worker) to perform services on behalf of the appellant during the quarters at issue. The worker received few, if any, instructions about when, where, and how the work was to [be] done. The only "training" received, was that the worker watched another individual perform similar services at the employer's place of business. When the worker was comfortable that she could handle the work on her own, the worker began performing services at that time. The services are an integral part of the business operations. No discussion occurred as to whether the worker's services were to be performed personally. The appellant hired an assistant, in the form of a secretary, to help the worker perform her job. There was a continuing relationship between the worker and the appellant. The worker set her own work schedule, although she was required to check out, during the hours of 9 a.m. and 5 p.m., so that the main office would know if there was an individual in the worker's office to handle matters if the corporate office transferred issues to that office. No discussion occurred regarding whether the worker was required to devote full-time services to this work. Substantially all of the work was performed at the place of business of the company, although the worker had the ability to operate from her own home, which she did on occasion. No direction was given to the worker as to the sequence in which the work must be done, although specific instructions were given as to taking credit card information if a "sale" occurred. The worker operated from specific written documentation, and did provide "reports" on that documentation regarding whether or not she was able to successfully sell a listing. If a listing was successful, the worker would file reports regarding the listing, including the above mentioned credit card information, from which the worker received a commission. No expenses of the worker, had there been any ongoing expense, were reimbursed by

the twenty factors set forth in Rev. Rul. 87–41, as applied to this case, follows:[5]

1. *Instructions.* A worker who is required to comply with other persons' instructions about when, where, and how he or she is to work is ordinarily an employee. This control factor is present if the person or persons for whom the services are performed have the *right* to require compliance with instructions.

While the instructions given to Hitchcock were minimal and she was permitted a great deal of flexibility in completing her work, this factor weighs in favor of the Division. Hitchcock testified that her manager gave her general instructions on what to say to prospective clients on the telephone. For example, she was told to tell customers that she was calling with Century 21 and to assure them that it was a reputable company and that their time-shares would be sold. She was also instructed to suggest a list price at "a couple thousand dollars" above what the customer had paid for it, although the evidence showed that this was not a requirement. She was instructed to request a customer's credit card number for payment after the customer agreed to list a time-share with the company. When she secured a listing, she was instructed to gather certain information regarding the time-share and turn in a worksheet with the information to the secretary, who forwarded it to the company's contract department.

2. *Training.* Training a worker by requiring an experienced employee to work with the worker, by corresponding with the worker, by requiring the worker to attend meetings, or by using other methods, indicates that the person or persons for whom the services are performed want the services performed in a particular method or manner.

According to both Hitchcock and National Resort's representative, Hitchcock's training consisted of allowing her to observe and listen to an experienced agent perform his duties and speak to prospective clients on the telephone. There was also some evidence suggesting that Hitchcock received a minimal amount of instructions from the manager on how to conduct her phone calls. The training Hitchcock received was minimal, but this factor weighs in favor of the Division.

3. *Integration.* Integration of the worker's services into the business operations generally shows that the worker is subject to direction and control. When the success or continuation of a business depends to an appreciable degree upon the performance of certain services, the workers who perform those services must necessarily be subject to a certain amount of control by the owner of the business.

Hitchcock's services were integrated into the business operations. The company was in the business of listing and selling time-shares, and its success depended on

the appellant. The company furnished an office to work from, desk, chair, telephone, writing utensils, and paper. Long distance calls from the office to potential clients were also paid for by the appellant. Other than a period of time in which the worker invested in a business phone line at her home, the worker had no other investment in the work. The worker could have realized a loss in the work, as a result of installing, on a temporary basis, a business phone line from which to operate after

hours from home, if the worker had not produced sufficient listings to cover that expense. Neither party presented evidence showing that the worker performed similar services for any other business at the same time as performing services for the appellant.

**5.** The listed factors and accompanying descriptions are all quoted from Rev. Rul. 87–41, 1987–1 C.B. 296 (internal citations omitted).

the agents' ability to obtain listings for sale. One indication that Hitchcock's services were important to the company is that she was required to notify the home office in Hot Springs, Arkansas, if she was going to be out of the office so that calls would not be transferred to her. This factor weighs in favor of the Division.

4. *Services Rendered Personally.* If the services must be rendered personally, presumably the person or persons for whom the services are performed are interested in the methods used to accomplish the work as well as in the results.

This factor tilts toward to the Division. The record reveals that there was no discussion regarding whether Hitchcock was permitted to send a substitute to perform her duties. Hitchcock assumed that doing so was not permitted. On a Worker Relationship Questionnaire completed by the company and provided to the Division, the company indicated that Hitchcock was required to perform the services personally. Thus, National Resort was presumably interested in not only the results but the methods used.

5. *Hiring, Supervising, and Paying Assistants.* If the person or persons for whom the services are performed hire, supervise, and pay assistants, that factor generally shows control over the workers on the job. However, if one worker hires, supervises, and pays the other assistants pursuant to a contract under which the worker agrees to provide materials and labor and under which the worker is responsible only for the attainment of a result, this factor indicates an independent contractor status.

This factor weighs in favor of the Division. The company hired a secretary to assist the agents. Hitchcock did not pay or supervise the secretary.

6. *Continuing Relationship.* A continuing relationship between the worker and the person or persons for whom the services are performed indicates that an employer-employee relationship exists. A continuing relationship may exist where work is performed at frequently recurring although irregular intervals.

There was a continuing relationship between Hitchcock and National Resort. The record indicated that Hitchcock worked for the company for about a year, from February 1999 until March 2000. Hitchcock completed most of her work during the hours of 9 a.m. to 5 p.m. While the company stated that she was permitted to set her own hours, she was expected to call the secretary if she was going to be late and notify the home office if she left before 5 p.m. This factor supports the Division.

7. *Set Hours of Work.* The establishment of set hours of work by the person or persons for whom the services are performed is a factor indicating control.

The company's representative testified that agents were not required to perform their work during specified hours and were free to work from home. However, Hitchcock was required to notify the main office if she was going to be out of the office between 9 a.m. and 5 p.m. The purpose of checking in with the home office was so that they would not transfer calls to Hitchcock while she was unavailable. She also had a key to the office and would sometimes work on weekends. While Hitchcock's schedule was flexible, the company's requirement that she check in between the hours of 9 a.m. and 5 p.m. indicates control by the employer and tends to favor the Division.

8. *Full Time Required.* If the worker must devote substantially full time to the business of the person or persons for whom the services are performed, such

person or persons have control over the amount of time the worker spends working and impliedly restrict the worker from doing other gainful work. An independent contractor on the other hand, is free to work when and for whom he or she chooses.

The company stated that Hitchcock was permitted to set her own hours. At the same time, however, her schedule was restricted in that she was required to check in with the company between the hours of 9 a.m. to 5 p.m., indicating that she was expected to work during those hours. While the company allowed Hitchcock flexibility in her schedule, the fact that she was required to check in between the hours of 9 a.m. and 5 p.m. indicates control and thereby tends to support employee status.

9. *Doing Work on Employer's Premises.* If the work is performed on the premises of the person or persons for whom the services are performed, that factor suggests control over the worker, especially if the work could be done elsewhere. Work done off the premises of the person or persons receiving the services, such as at the office of the worker, indicates some freedom from control. However, this fact by itself does not mean that the worker is not an employee. The importance of this factor depends on the nature of the service involved and the extent to which an employer generally would require that employees perform such services on the employer's premises. Control over the place of work is indicated when the person or persons for whom the services are performed have the right to compel the worker to travel a designated route, to canvass a territory within a certain time, or to work at specific places as required.

Hitchcock performed most of her work at National Resort. National Resort's representative testified that agents were not required to work on the business premises but that agents only "occasionally" worked from home and were only allowed to do so if they had a fax machine and a method of maintaining contact with the office in order to obtain "leads." For a period of time, Hitchcock did install a separate telephone line in her home which she used to call prospective clients that could not be reached before 5 p.m. Hitchcock paid for the expense of the separate phone line and the bills generated from that phone line. She later disconnected the phone line because she was not completing enough work at home to justify the expense. Hitchcock testified that the total expense of the phone line was a "couple hundred dollars." The overall effect of this evidence is that Hitchcock worked at National Resort's premises the vast majority of the time, which suggests control and employee status.

10. *Order or Sequence Set.* If a worker must perform services in the order or sequence set by the person or persons for whom the services are performed, that factor shows that the worker is not free to follow the worker's own pattern of work but must follow the established routines and schedules of the person or persons for whom the services are performed.

This factor is somewhat neutral. Certain procedures were set by the company: Hitchcock was provided with "leads" or names of potential clients to contact by telephone. If she secured a listing, she recorded pertinent information about the time-share on worksheets provided by the company, and those worksheets were turned into the contracts department. If she did not, she made a note on the "lead sheet" and returned it to the secretary. At the same time, she was not required to

make a certain number of calls per day or keep track of the number or calls she made or the order in which she called clients. In addition, she was free to leave for personal errands, as long as she notified the home office. She was also free to make calls at home if customers could not be reached during the workday.

11. *Oral or Written Reports.* A requirement that the worker submit regular or written reports to the person or persons for whom the services are performed indicates a degree of control.

Hitchcock was given worksheets that included contact information for prospective clients. If a caller agreed to list a timeshare with the company, she filled out a worksheet to submit to the company that included pertinent information regarding the time-share, the suggested list price, the client's credit card number and the card's expiration date. If a client was not interested in listing with the company, she made a notation on the "lead sheet," marked the date and her initials and returned the sheet to the secretary. Thus, Hitchcock was continuously making written reports, which suggests significant control.

12. *Payment by Hour, Week, Month.* Payment by the hour, week, or month generally points to an employer-employee relationship, provided that this method of payment is not just a convenient way of paying a lump sum agreed upon as the cost of a job. Payment made by the job or on a straight commission generally indicates that the worker is an independent contractor.

Hitchcock was paid on a straight commission. She did not receive a salary. This factor favors National Resort.

13. *Payment of Business and/or Traveling Expenses.* If the person or persons for whom the services are performed ordinarily pay the worker's business and/or traveling expenses, the worker is ordinarily an employee. An employer, to be able to control expenses, generally retains the right to regulate and direct the worker's business activities.

National Resort paid all of Hitchcock's expenses when she performed her work at the office. But this factor goes more toward commonly understood business expenses, such as meals and lodging while traveling, and related expenses. There was no evidence regarding those types of expenses other than that Hitchcock paid for the phone line at her house during the brief time it was installed. Therefore, this factor tends to slightly favor National Resort.

14. *Furnishing of Tools and Materials.* The fact that the person or persons for whom the services are performed furnish significant tools, materials, and other equipment tends to show the existence of an employer-employee relationship.

National Resort provided the office, telephone, desk, writing utensils, paper, and the lists of potential customers. The company also paid for all of the expenses involved in the business, including the phone bills. The only expense Hitchcock paid was for the phone she had installed at her home for a short time. This factor weighs in favor of the Division.

15. *Significant Investment.* If the worker invests in facilities that are used by the worker in performing services and are not typically maintained by employees (such as the maintenance of an office rented at fair market value from an unrelated party), that factor tends to indicate that the worker is an independent contractor. On the other hand, lack of investment in facilities indicates dependence on the person or persons for whom the services are performed for

such facilities and, accordingly, the existence of an employer-employee relationship. Special scrutiny is required with respect to certain types of facilities, such as home offices.

Hitchcock's only investment was her short-lived business phone in her home, and it was *de minimis.* This factor supports the Division's position.

16. *Realization of Profit or Loss.* A worker who can realize a profit or suffer a loss as a result of the worker's services (in addition to the profit or loss ordinarily realized by employees) is generally an independent contractor, but the worker who cannot is an employee. For example, if the worker is subject to a real risk of economic loss due to significant investments or a bona fide liability for expenses, such as salary payments to unrelated employees, that factor indicates that the worker is an independent contractor.

This factor supports the Division. National Resort assumed all of Hitchcock's expenses while she performed her work at the office. Hitchcock had no real potential to suffer a loss.

17. *Working for More Than One Firm at a Time.* If a worker performs more than de minimis services for a multiple of unrelated persons or firms at the same time, that factor generally indicates that the worker is an independent contractor. However, a worker who performs services for more than one person may be an employee of each of the persons, especially where such persons are part of the same service arrangement.

There was no evidence showing that Hitchcock performed services for any other company, although National Resort's representative testified that she would have been free to do so. The company indicated on the questionnaire it submitted to the Division that Hitchcock was prohibited from competing with the business. This factor supports the Division.

18. *Making Service Available to General Public.* The fact that a worker makes his or her services available to the general public on a regular and consistent basis indicates an independent contractor relationship.

There was no evidence indicating that Hitchcock made her services available to the general public, and this suggests Hitchcock was an employee.

19. *Right to Discharge.* The right to discharge a worker is a factor indicating that the worker is an employee and the person possessing the right is an employer. An employer exercises control through the threat of dismissal, which causes the worker to obey the employer's instructions. An independent contractor, on the other hand, cannot be fired so long as the independent contractor produces a result that meets the contract specifications.

The record reflects that National Resort could have terminated Hitchcock at any time and did terminate her. This factor favors the Division.

20. *Right to Terminate.* If the worker has the right to end his or her relationship with the person for whom the services are performed at any time he or she wishes without incurring liability, that factor indicates an employer-employee relationship.

Hitchcock was free to terminate her relationship with National Resort at any time. This factor supports employee status.

Based on the foregoing analysis, the vast majority of the twenty factors support the Division's conclusion that Hitchcock was National Resort's employee, with just a few being neutral and only a couple

supporting National Resort's position that Hitchcock was an independent contractor. As noted *supra,* our decision is not based on a numerical count of the factors. Rather, the real issue is whether National Resort controlled the manner and means of Hitchcock's performance. *Stover,* 11 S.W.3d at 696. Our review of the record reveals that the Commission's decision is supported by competent and substantial evidence and is not against the overwhelming weight of the evidence.

The award of the Labor and Industrial Relations Commission is affirmed.

All concur.