**Don FRITTS and Janet Fritts, Appellants,**

v.

**Richard D. WILLIAMS and Division of Employment Security, Respondents.**

**No. 22721.**

Missouri Court of Appeals,
Southern District,
Division One.

May 26, 1999.

Jack A. L. Goodman, Stemmons Law Firm, P.C., Mount Vernon, for appellants.

Marilyn Green, Jefferson City, for respondent Division of Employment Security.

No other appearance.

CROW, Judge.

This case arises under the Missouri Employment Security Law, chapter 288, RSMo 1994, as amended.

Appellants operate "The Plumbing Company," a plumbing repair and service business. Richard D. Williams ("Claimant") is a plumber.

In 1997, Appellants paid Claimant for responding to service calls received by Appellants.

The Labor and Industrial Relations Commission ("Commission"), in a two-to-one decision, held Claimant was Appellants' employee, hence Claimant was entitled to wage credits in the amount Appellants paid him.

Appellants bring this appeal, maintaining Commission erred in that the facts demonstrate Claimant was an independent contractor, not their employee.

The facts were established at a hearing conducted by an Appeals Referee ("Referee") of the Division of Employment Security ("Division"). Referee's findings of fact were adopted by Commission and are unchallenged by Appellants. The facts set forth in this opinion are drawn from Referee's findings.

During a lengthy period of personal illness spanning the calendar quarters ending March 31, 1997, and June 30, 1997, Appellant Don Fritts ("Don") was unable to personally perform all service calls Appellants received. Consequently, Appellants arranged for other plumbers, one of whom was Claimant, to respond to calls Don could not handle. For convenience, this opinion refers to those plumbers as "substitutes."

Substitutes worked on a "service call by service call basis." When Appellants received a call to which Don could not respond, Appellants contacted a substitute, who could accept or reject the call as he saw fit. If the substitute rejected the call, Appellants contacted the next substitute on the list. The sole requirement Appellants made was that upon accepting a call, a substitute respond to it in a timely manner.

The substitute accepting the call was expected to perform the work personally, unaided by assistants. If the substitute found any call too difficult or "over his head," he called Appellants for help.

Appellants' relationship with Claimant was informal and intermittent. Appellants did not set Claimant's hours of work and did not require him to work full time. Claimant was free to work for other firms during the months he responded to Appellants' service calls as a substitute.

Claimant made no oral or written reports to Appellants. None of the work performed by Claimant was done on Appellants' premises.

Appellants charged customers $35 per service call handled by a substitute. However, if the work required more than an hour, Appellants charged $35 for each additional hour. A substitute had some freedom to determine what work was necessary in response to any call and was free to impose additional charges on customers as the work required.

Claimant furnished his own hand tools; he also used large specialized tools belonging to Appellants such as those designed to remove tree roots from sewer lines. Claimant had no investment in Appellants' business; his only investment was in his personal tools.

Appellants paid Claimant weekly, allocating him 25 to 30 percent of the gross revenues of service calls he handled. Appellants did not reimburse Claimant for business or travel expenses. During the first and second quarters of 1997, Appellants paid Claimant $2,098.75 and $2,329.16, respectively.

On April 24, 1998, a deputy of Division determined that the amounts Appellants paid Claimant were wages as defined by § 288.036.1, RSMo Cum.Supp.1996, hence Claimant was entitled to wage credits of $2,098.75 for the quarter ending March 31, 1997, and $2,329.16 for the quarter ending June 30, 1997.

Appellants appealed the deputy's determination. Referee (mentioned earlier) upheld the deputy, whereupon Appellants filed an application for review by Commission per § 288.200, RSMo Cum.Supp.1996. As reported earlier in this opinion, Commission upheld Referee, two-to-one.

■ This court's authority to review Commission's determination is conferred by § 288.210, RSMo Supp.1995. The standards for review are comprehensively spelled out in *Travelers Equities Sales, Inc. v. Division of Employment Security*, 927 S.W.2d 912, 916–17 (Mo.App. W.D. 1996). As noted there, where the facts are undisputed, yet the significance of those facts can be viewed in different ways, the case involves primarily the application of the law to the facts. *Id.* at 917. In that undertaking, an appellate court is not bound by Commission's conclusions of law, including statutory interpretation. *Id.* at 917[3].

The statute on which this appeal hinges is § 288.034.5, RSMo 1994.[1] It reads:

"Service performed by an individual for remuneration shall be deemed to be employment subject to this law unless it is shown to the satisfaction of the division that such services were performed

by an independent contractor. In determining the existence of the independent contractor relationship, the common law of agency right to control shall be applied. The common law of agency right to control test shall include but not be limited to: If the alleged employer retains the right to control the manner and means by which the results are to be accomplished, the individual who performs the service is an employee. If only the results are controlled, the individual performing the service is an independent contractor."

*Travelers Equities* points out that the director of Division promulgated 8 CSR 10–4.150(1), which reads:

"In order to interpret section 288.034.5, RSMo, effective June 30, 1989, the division shall apply the common law rules applicable in determining the employer-employee relationship under 26 U.S.C., Section 3306(i). In applying the provisions of 26 U.S.C., Section 3306(i) the division shall consider the case law, Internal Revenue Service regulations and Internal Revenue Service letter rulings interpreting and applying that subsection."

Commenting on the purpose of the above regulation, *Travelers Equities* explains:

"[I]t seems that the Division is seeking to avoid the confusion which would be caused by having several different tests of employment status. In other words, it seems a business should be able to receive consistent treatment from both the Internal Revenue Service and the Division of Employment Security as to its agents and workers. Therefore, we conclude that in construing the Missouri employment security law we should be guided by generally recognized common law concepts, including those set forth in decisions of the federal courts, and that

1. Section 228.034, RSMo 1994, was amended in 1997 and again in 1998. Neither amendment altered subsection 5.

we should not restrict ourselves to the decisions of Missouri Courts."

*Id.* at 921.

As noted in *Travelers Equities, id.* at 920, the Supreme Court of the United States faced the issue of whether a party was an employee or independent contractor in *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). The Supreme Court said:

> "In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party."

490 U.S. at 751–52, 109 S.Ct. at 2178–79[7] (footnotes omitted).

In *Travelers Equities,* the court said that the Internal Revenue Service, in attempting to capture the key elements for determining whether a party is an employee or independent contractor, has set forth twenty factors in Revenue Ruling 87–41. 927 S.W.2d at 921. Missouri appellate courts, in applying those factors, have engaged in an exhaustive factor-by-factor analysis in the factual context of the case under review. *See: Travelers Equities,*

927 S.W.2d at 921–25; *Kirksville Publishing Co. v. Division of Employment Security,* 950 S.W.2d 891, 896–99 (Mo.App. W.D. 1997); *Edward Lowe Industries, Inc. v. Missouri Division of Employment Security,* 865 S.W.2d 855, 860–63 (Mo.App. S.D. 1993); *Veterans Services, Inc. v. Labor and Industrial Relations Commission,* 861 S.W.2d 781, 786–90 (Mo.App. W.D. 1993).

■ Accordingly, this court will use that approach in the instant case. In doing so, this court will set forth each numbered factor. Beneath it, this court will apply the facts of the instant case to that factor and determine whether the factor indicates Claimant was Appellants' employee or an independent contractor. This court will depart from that practice only where the parties to this appeal agree on what the factor indicates or agree that the factor is inapplicable. On the subject of parties, the only ones filing briefs in this appeal are Appellants and Division.[2] Claimant did not appear at Referee's hearing, filed nothing with Commission, and tendered no brief as a respondent in this appeal.

1. INSTRUCTIONS. A worker who is required to comply with other persons' instructions about when, where, and how he or she is to work is ordinarily an employee. This control factor is present if the person or persons for whom the services are performed have the RIGHT to require compliance with instructions.

■ Appellants provided Claimant no instructions on *how* to work. However, before sending a substitute out the first time on a service call, Appellants required the substitute to work with Don or another plumber "[j]ust to make sure that they knew what they were doing." That is understandable because a customer dissatisfied with a substitute's performance

---

2. Section 288.210, RSMo Supp.1995, provides, *inter alia:*

"The commission shall notify the division of the commencement of the appeal, and,

upon receipt of such notice, the division shall be a party to any judicial action involving any such decision...."

could harm Appellants' business reputation and good will. Determining whether a substitute is competent to handle service calls is not tantamount to providing instructions. As to *when* a substitute worked, Appellants' only requirement was that a substitute accepting a call handle it in a timely manner. Appellants had no control over when service calls were received, and no substitute was required to accept any call. The place *where* a substitute worked was the site where the customer needed the service, not a site chosen by Appellants.

Factor 1 indicates independent contractor.

2. TRAINING. Training a worker by requiring an experienced employee to work with the worker, by corresponding with the worker, by requiring the worker to attend meetings, or by using other methods, indicates that the person or persons for whom the services are performed want the services performed in a particular method or manner.

■ Appellants provided Claimant no on-the-job training. Furthermore, Appellants did not correspond with substitutes, require substitutes to attend meetings, or insist that the work on any service call be "performed in a particular method or manner." Appellants assisted a substitute only when the substitute found a particular service call too difficult or "over his head."

Factor 2 indicates independent contractor.

3. INTEGRATION. Integration of the worker's services into the business operations generally shows that the worker is subject to direction and control. When the success or continuation of a business depends to an appreciable degree upon the performance of certain services, the workers who perform those services must necessarily be subject to a certain amount of control by the owner of the business.

■ Referee found Claimant's services were highly integrated into Appellants'

business. Obviously, the success and continuation of Appellants' business depended to an appreciable degree upon the performance of the substitutes. An analogous situation existed in *Kirksville Publishing*, 950 S.W.2d 891. The issue there was whether motor carriers who delivered newspapers were employees of the publisher or independent contractors. *Id.* at 893. The court held: "Independent contractors are just as capable of providing the services of the carriers as are employees. As such, it is not imperative that the motor carriers be subject to significant control by [the publisher] to insure its business is conducted, which cuts against a finding that the carriers' services were 'integrated' into the business operations of [the publisher]." *Id.* at 898. In the instant case, substitutes were subject to scant control by Appellants while performing service calls and there is no evidence that employees would have performed service calls any better (or any worse) than independent contractors.

Factor 3 is evenly balanced between employee and independent contractor.

4. SERVICES RENDERED PERSONALLY. If the Services must be rendered personally, presumably the person or persons for whom the services are performed are interested in the methods used to accomplish the work as well as in the results.

Parties agree factor 4 indicates employee.

5. HIRING, SUPERVISING, AND PAYING ASSISTANTS. If the person or persons for whom the services are performed hire, supervise, and pay assistants, that factor generally shows control over the workers on the job. However, if one worker hires, supervises, and pays the other assistants pursuant to a contract under which the worker agrees to provide materials and labor and under which the worker is responsible only for the attainment of a result,

this factor indicates an independent contractor status.

Parties agree factor 5 is inapplicable.

6. CONTINUING RELATIONSHIP. A continuing relationship between the worker and the person or persons for whom the services are performed indicates that an employer-employee relationship exists. A continuing relationship may exist where work is performed at frequently recurring although irregular intervals.

Parties agree factor 6 indicates independent contractor.

7. SET HOURS OF WORK. The establishment of set hours of work by the person or persons for whom the services are performed is a factor indicating control.

Parties agree factor 7 indicates independent contractor.

8. FULL TIME REQUIRED. If the worker must devote substantially full time to the business of the person or persons for whom the services are performed, such person or persons have control over the amount of time the worker spends working and impliedly restrict the worker from doing other gainful work. An independent contractor on the other hand, is free to work when and for whom he or she chooses.

Parties agree factor 8 indicates independent contractor.

9. DOING WORK ON EMPLOYER'S PREMISES. If the work is performed on the premises of the person or persons for whom the services are performed, that factor suggests control over the worker, especially if the work could be done elsewhere. Work done off the premises of the person or persons receiving the services, such as at the office of the worker, indicates some freedom from control. However, this fact by itself does not mean that the worker is not an employee. The importance of this factor depends on the nature of the service involved and the extent to which an employer generally would require that employees perform such services on the employer's premises. Control over the place of work is indicated when the person or persons for whom the services are performed have the right to compel the worker to travel a designated route, to canvass a territory within a certain time, or to work at specific places as required.

Parties agree factor 9 is inapplicable.

10. ORDER OR SEQUENCE SET. If a worker must perform services in the order or sequence set by the person or persons for whom the services are performed, that factor shows that the worker is not free to follow the worker's own pattern of work but must follow the established routines and schedules of the person or persons for whom the services are performed. Often, because of the nature of an occupation, the person or persons for whom the services are performed do not set the order of the services or set the order infrequently. It is sufficient to show control, however, if such person or persons retain the right to do so.

▆ Appellants set the order and sequence of Claimant's work as necessary to respond to the service calls he accepted, and Appellants required Claimant to respond in a timely manner to those calls. However, Claimant was not required to accept any call and apparently experienced no adverse treatment by Appellants for declining a call. Thus, Appellants set the order and sequence of Claimant's work as to only the work he chose to perform.

Factor 10 is evenly balanced between employee and independent contractor.

11. ORAL OR WRITTEN REPORTS. A requirement that the worker submit regular or written reports to the person or persons for whom the services are performed indicates a degree of control.

Parties agree factor 11 indicates independent contractor.

12. PAYMENT BY HOUR, WEEK, MONTH. Payment by the hour, week, or month generally points to an employer-employee relationship, provided that this method of payment is not just a convenient way of paying a lump sum agreed upon as the cost of a job. Payment made by the job or on a straight commission generally indicates that the worker is an independent contractor.

■ Don testified he issued each substitute a "commission check" weekly. That testimony suggests substitutes were independent contractors. However, Don also testified: "[W]e kept track of their hours.... [I]f they didn't make enough on incentive, sometimes we'd make it up for them because they'd have to pay their rent and stuff like that[.]" That testimony suggests substitutes were sometimes compensated for the number of hours they worked, signifying they were employees. The $35 charge per service call, with the additional charge of $35 for each hour after the first, was the rate Appellants charged their customers, not the rate Appellants paid Claimant. Appellants allocated Claimant 25 to 30 percent of the gross revenues of service calls he handled. That arrangement resembles payment "by the job" or on a "straight commission," connoting independent contractor. Furthermore, Claimant was allowed to impose additional charges on customers in some circumstances, depending on the work. Inasmuch as Claimant received a percentage of the gross revenues of the service calls he handled, this feature of the arrangement also suggests independent contractor.

Given the hybrid nature of the compensation scheme, this court holds factor 12 is evenly balanced between employee and independent contractor.

13. PAYMENT OF BUSINESS AND/OR TRAVELING EXPENSES. If the person or persons for whom the services are performed ordinarily pay the worker's business and/or traveling expenses, the worker is ordinarily an employee. An employer, to be able to control expenses, generally retains the right to regulate and direct the worker's business activities.

Parties agree factor 13 indicates independent contractor.

14. FURNISHING OF TOOLS AND MATERIALS. The fact that the person or persons for whom the services are performed furnish significant tools, materials, and other equipment tends to show the existence of an employer-employee relationship.

■ Claimant furnished his own hand tools, but used Appellants' large equipment (sewer machines, drain cleaning machines, pipe threaders, etc.). Division argues it is a reasonable inference that Appellants had the right to supervise Claimant's use of their tools. However, it is equally inferable that Appellants had no right to supervise Claimant's use of his own tools. It is likewise inferable that Claimant bore the loss if any of his tools were damaged or lost on the job.

Factor 14 is evenly balanced between employee and independent contractor.

15. SIGNIFICANT INVESTMENT. If the worker invests in facilities that are used by the worker in performing services and are not typically maintained by employees (such as the maintenance of an office rented at fair value from an unrelated party), that factor tends to indicate that the worker is an independent contractor. On the other hand, lack of investment in facilities indicates dependence on the person or persons for whom the services are performed for such facilities and, accordingly, the existence of an employer-employee relationship. Special scrutiny is required with respect to certain types of facilities, such as home offices.

Parties agree factor 15 indicates employee.

16. REALIZATION OF PROFIT OR LOSS. A worker who can realize a profit or suffer a loss as a result of the work-

er's services (in addition to the profit or loss ordinarily realized by employees) is generally an independent contractor, but the worker who cannot is an employee. For example, if the worker is subject to a real risk of economic loss due to significant investments or a bona fide liability for expenses, such as salary payments to unrelated employees, that factor indicates that the worker is an independent contractor. The risk that a worker will not receive payment for his or her services, however, is common to both independent contractors and employees and thus does not constitute a sufficient economic risk to support treatment as an independent contractor.

■ Referee found the ability of Claimant to realize losses as well as profits from the performance of his services for Appellants was remote.

Factor 16 indicates employee.

17. WORKING FOR MORE THAN ONE FIRM AT A TIME. If a worker performs more than de minimis services for a multiple of unrelated persons or firms at the same time, that factor generally indicates that the worker is an independent contractor. However, a worker who performs services for more than one person may be an employee of each of the persons, especially where such persons are part of the same service arrangement.

Parties agree factor 17 indicates independent contractor.

18. MAKING SERVICE AVAILABLE TO GENERAL PUBLIC. The fact that a worker makes his or her services available to the general public on a regular and consistent basis indicates an independent contractor relationship.

■ Referee found: "Since Claimant worked only part-time for Appellants by responding to individual service calls, he was free to work for other firms at the same time he performed services for Appellants and was free to offer his services to the general public." Division argues that Appellants presented no evidence that Claimant offered his services to the general public, hence factor 18 shows Claimant was an employee. Appellants maintain it would be bad policy and lead to unjust results to ascribe liability to them on the basis of Claimant's independent marketing decisions.

Because Claimant had the right to offer his services to the general public but, for whatever reason, chose not to, this court holds factor 18 is evenly balanced between employee and independent contractor.

19. RIGHT TO DISCHARGE. The right to discharge a worker is a factor indicating that the worker is an employee and the person possessing the right is an employer. An employer exercises control through the threat of dismissal, which causes the worker to obey the employer's instructions. An independent contractor, on the other hand, cannot be fired so long as the independent contractor produces a result that meets the contract specifications.

■ Referee found: "Appellants believed they had the right to discharge Claimant at any time and also believed that Claimant could voluntarily terminate performing his services for Appellants at any time." Referee's finding regarding Appellants' right to "discharge" Claimant was apparently based on Don's answer to the following question in a questionnaire submitted by Division: "Can the firm terminate the services of the worker at any time without incurring a liability?" Don answered yes. The difficulty in applying the above facts to factor 19 is that each service·call handled by Claimant as a substitute for Appellants was treated as a separate project. Had Claimant rendered unsatisfactory service on one of the calls, Appellants could have opted to offer Claimant no future calls without incurring liability to him. That feature of the arrangement resembles an independent contractor relationship in that an owner, if dissatisfied with a contractor's perfor-

mance on one project, is free to offer no future project to the contractor. Furthermore, once Claimant accepted a service call from Appellants, it is inferable that Appellants had no right to terminate Claimant's services before he completed the work on that call, so long as he produced a result that met the requirements for the call. That feature of the arrangement also resembles an independent contractor relationship. However, as noted above, Don unequivocally answered yes when asked whether Appellants could terminate Claimant's services *at any time* without incurring liability. That answer is consistent with an employer-employee relationship.

Because conflicting conclusions can be drawn from the above facts, this court holds factor 19 is evenly balanced between employee and independent contractor.

20. RIGHT TO TERMINATE. If the worker has the right to end his or her relationship with the person for whom the services are performed at any time he or she wishes without incurring liability, that factor indicates an employer-employee relationship.

■ Claimant could reject any service call offered him by Appellants, hence he could terminate his relationship with Appellants anytime he chose. In that sense, Claimant was like an independent contractor who, upon being offered a project, is free to accept or reject the offer. Furthermore, it is inferable that once Claimant accepted a service call from Appellants, Claimant was obligated to perform the service required by the call and had no right to abandon the job before it was finished. That feature of the arrangement also resembles an independent contractor relationship. However, as reported in the discussion of factor 19, Appellants believed Claimant could voluntarily terminate performing his services for them *at any time* without incurring liability. That notion is consistent with an employer-employee relationship.

Because conflicting conclusions can be drawn from the above facts, this court holds factor 20 is evenly balanced between employee and independent contractor.

The factors listed by the Supreme Court of the United States in *Community for Creative Non–Violence*, 490 U.S. at 751–52, 109 S.Ct. at 2178–79[7], include two that do not appear in Revenue Ruling 87–41. They are: (1) the provision of employee benefits, and (2) the tax treatment of the hired party.

■ Appellants provided Claimant no employee benefits such as health insurance, paid vacations, or a retirement plan. The absence of such benefits indicates an independent contractor relationship. Appellants withheld no federal income tax from the sums they paid Claimant. That likewise indicates an independent contractor relationship.

In sum, of the twenty factors in Revenue Ruling 87–41, eight indicate independent contractor, three indicate employee, seven are evenly balanced, and two are inapplicable. The "employee benefits" and "tax treatment" factors from *Community for Creative Non–Violence* indicate independent contractor.

■ Mindful that this court cannot rest its decision merely on a numerical count of factors, *Travelers Equities*, 927 S.W.2d at 925[13], this court nonetheless holds that the greater weight of the factors addressed herein establishes, as a matter of law, that Appellants did not retain the right to control the manner and means by which Claimant was to perform the service calls he accepted, and that Appellants controlled only the results. Accordingly, Claimant was an independent contractor under the statutory test in § 288.034.5, RSMo 1994. Commission thus erred as a matter of law in ruling that Claimant was entitled to wage credits in the amount Appellants paid him during the calendar

quarters ending March 31, 1997, and June 30, 1997.

Commission's decision is reversed.

PREWITT, P.J., and PARRISH, J., concur.