**NATIONAL HERITAGE ENTERPRISES, INC.,** Appellant,

v.

**DIVISION OF EMPLOYMENT SECURITY, Respondent.**

No. WD 64201.

Missouri Court of Appeals, Western District.

June 7, 2005.

Jean H. Maylack and Richard G. Hauser, St. Louis, MO, for appellant.

Marilyn Green and Cynthia A. Quetsch, Jefferson City, MO, for respondent.

Before EDWIN H. SMITH, C.J., and HOWARD and HOLLIGER, JJ.

EDWIN H. SMITH, Chief Judge.

National Heritage Enterprises, Inc., appeals from the decision of the Labor and Industrial Relations Commission (Commission) that the payments made to its employee, Lynda Ridley, for performing certain after-hours services for the appellant were considered wages subject to state unemployment taxes, pursuant to the Missouri Employment Security Law, §§ 288.010–.390.[1]

The appellant raises two points on appeal. In both points, it claims that the Commission erred in concluding that the payments made to Ridley for performing the after-hour services were wages subject to state unemployment taxes. It claims in both points that the Commission erred in so concluding because its supporting finding, that the after-hours services performed by Ridley constituted employment, as defined in § 288.034, rather than services performed by an independent contractor, was not supported by competent and substantial evidence.

We reverse.

### Facts

In May of 1996, Ridley became a full-time employee of the appellant, a holding company with corporate offices in St. Louis, Missouri. The appellant controls a number of subsidiaries, including Memorial Services Life Insurance Company (Memorial), which also has corporate offices in St. Louis. Specifically, Ridley worked full time for Memorial as a paralegal from May of 1996 until July of 2001. At some point in 1999, Ridley and the appellant agreed that, in addition to working a 40–hour week at Memorial's corporate offices as a paralegal, she would do additional work for the appellant during the evenings and on weekends.

The appellant's arrangement with Ridley came to the attention of the Division when it performed a random audit of the appellant's payroll records. On June 1, 2001, Robin Cleveland, the Division auditor, reported her findings, in which she described Ridley's duties as a paralegal, and the additional work Ridley performed on evenings and weekends:

Lynda stated that her normal job duties for [Memorial] was [sic] essentially legal research and maintaining (insurance) agent licensing and funeral director licensing research. At the conclusion of her day, one of the vice-presidents, Nicki Provence, would have a stack of work available for her to take home. This work was varied in nature and included notations about what was to be done to it, including completion dates or special needs. Lynda described it generally as being anything you could do on her computer at home. This included producing a manager's manual, designing flyers and inserts, document preparation and the reconciling of changing rate structures on insurance policies. She mentioned that she even helped in the acquisition of a New York condo for one of the owners. She stated that folder was 1½″ thick and required her to prepare financial statements and tax returns and document asset agreements.

Lynda stated they had agreed upon a flat rate of $525/week (for most of 2000) regardless of the number of hours worked. There was no report on hours worked/week or project. They just al-

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

ways made sure there was enough work there for her to take home. Lynda stated that if the workload became overwhelming she would only take what she could. She had Nicki Provence's home number if she had any problems or required clarification on a job. She worked evenings and weekends as her workload demanded and her husband had minimal involvement.

Cleveland concluded that, in performing the after-hours services for the appellant, Ridley "was under sufficient direction and control so as to constitute employment effective 1.1.1999. This remuneration is considered wages and is reportable and taxable." On June 25, 2001, the Division mailed the appellant its determination that the payments which Ridley received for the additional services which she performed on evenings and weekends were wages for the purpose of the Missouri Employment Security Law and were subject to unemployment insurance taxes.

The appellant filed an administrative appeal, pursuant to § 288.130. On February 17, 2004, the Appeals Tribunal heard the appeal by telephone conference. During the telephone conference, Ridley testified that, in 1995, she had started a sole proprietorship, R & L Enterprises, doing office work and document preparation at home. According to Ridley, sometime in 1999, she told Provence about R & L Enterprises and offered its services to make some needed revisions in the appellant's corporate manuals and procedure books after hours. Ridley testified that Provence agreed to the arrangement, and the work assignments were "put into a central location [in the corporate office] because there were other independent contractors but the work was put into a central location and you were free to take what you wanted to do."

Ridley testified that, in addition to document preparation, the after-hours work which Ridley performed for the appellant included picking up clients at the airport and cleaning the corporate suite and apartment. She also testified that, other than when her husband or son would do the driving to and from the airport, she performed all of the services offered by R & L Enterprises herself. R & L Enterprises had five clients in addition to the appellant. Ridley testified that she spent, on the average, fifteen hours a week performing services for the appellant in her capacity as R & L Enterprises and twelve hours a week performing services for other clients. Ridley testified that she used her own computer and office supplies for the work that she performed at home, and she purchased the supplies which she used in cleaning the corporate suites and apartment. In 1999, she purchased a limousine which she used to pick up corporate clients at the airport. Ridley's document preparation and cleaning services were not advertised. However, her limousine services were advertised in the telephone directory, local publications, and on business cards.

Ridley received two weekly checks from the appellant: one of which was made out to her and represented her salary for her full-time position at Memorial, the other of which was made out to "Linda Ridley d/b/a R & L Enterprises." State and federal taxes were not withheld from the latter check. Initially, the check made out to "Linda Ridley d/b/a R & L Enterprises" was between $380 and $400 a week. Then, in 2000, the amount increased to $525 per week.

On February 24, 2004, the Appeals Tribunal issued its decision affirming the June 25, 2001, determination of the Division that, in working for the appellant in her capacity as R & L Enterprises, Ridley was functioning as an employee rather

than an independent contractor. The Appeals Tribunal's decision included the following findings and conclusions:

> The appellant has the burden of proving that the additional work performed during the evenings and weekends by Linda Ridley was as an independent contractor.

> The appellant cannot change an employee into an independent contractor just by a name change or a label. The Tribunal is not convinced that the office work Ms. Ridley took to complete on her home computer was any different in nature than the work she was assigned by her supervisors in her full time salaried administrative paralegal position. The same supervisors left notes and directions for the completion of the work she took home. She called them at home and asked for assistance in order to complete the work. The only difference was that she was not assigned a specific project; she was allowed to choose from the stack which task she cared to work on at home.

> The services she performed under the business name R & L Enterprises were highly integrated to the appellant's businesses. She performed the services herself and there was no evidence that she hired assistants. The relationship between the appellant and Ms. Ridley was ongoing and continuing.

> Some of the factors suggest an independent contractor relationship. The appellant did not withhold taxes from the weekly checks issued to R & L Enterprises. The appellant did not require time sheets or invoices for payment. Ms. Ridley used her own computer and office supplies for the work she performed at home. She could work whatever evening or weekend hours she desired. R & L Enterprises was listed in the phone book. But these factors are outweighed by the factors mentioned before which support an employer-employee relationship. A paralegal that performs legal research and document preparation is required to be supervised by an attorney. The supervision is required whether the work is performed at home or at the office. The Tribunal is not persuaded that Ms. Ridley made policy and handbook revisions without the appellant's management retaining the right to control her work.

> In the judgment of the Tribunal the relationship of the appellant and Linda Ridley dba R & L Enterprises was that of an employer and employee. Therefore beginning January 1, 1999 ... the remuneration paid to Linda Ridley dba R & L Enterprises for specialized office support constituted "wages" in "employment" within the meaning of those terms as defined in Sections 288.034 and 288.036 of the RSMo.

On April 30, 2004, the Commission adopted the decision of the Appeals Tribunal. The appellant then appealed the Commission's decision to this court, pursuant to § 288.210.

This appeal followed.

### Standard of Review

Our review of the Commission's decision is governed by § 288.210, which provides, in pertinent part:

> The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

*Quik 'N Tasty Foods, Inc. v. Division of Employment Sec.*, 17 S.W.3d 620, 623–24 (Mo.App.2000). Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record. *Dolgencorp, Inc. v. Zatorski*, 134 S.W.3d 813, 817 (Mo.App.2004) (citing *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. *banc* 2003)). An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence. *Id.* (citing *Hampton*, 121 S.W.3d at 223). Furthermore, on appeal, we are not bound by the Commission's conclusions of law or the Commission's application of law to the facts. *McClelland v. Hogan Pers., LLC*, 116 S.W.3d 660, 664 (Mo.App.2003).

## I.

■ In Point I, the appellant claims that the Commission erred in concluding that the payments the appellant made to Ridley for performing after-hours services were wages subject to state unemployment taxes, as defined by § 288.036, because its supporting finding, that the after-hours services performed by Ridley constituted employment, as defined in § 288.034, rather than services performed by an independent contractor, was not supported by competent and substantial evidence. Specifically, it claims that the "twenty-factor test," used for distinguishing between an employee and an independent contractor, when applied to the work performed by Ridley for the appellant after hours: housecleaning and limousine services on evenings and weekends, clearly weighed in

favor of a finding that Ridley was an independent contractor.

■ Pursuant to the Missouri Employment Security Law, §§ 288.010–.390, employers are required to make unemployment tax contributions for their employees, but not for independent contractors. *Quality Med. Transcription, Inc. v. Woods*, 91 S.W.3d 181, 184–85 (Mo. App.2002). A "right of control" test is used to determine whether an individual is an employee or an independent contractor, as set forth in § 288.034.5:

> Service performed by an individual for remuneration shall be deemed to be employment subject to this law unless it is shown to the satisfaction of the division that such services were performed by an independent contractor. In determining the existence of the independent contractor relationship, the common law of agency right to control shall be applied. The common law of agency right to control test shall include but not be limited to: If the alleged employer retains the right to control the manner and means by which the results are to be accomplished, the individual who performs the service is an employee. If only the results are controlled, the individual performing the service is an independent contractor.

Under the "right of control" test, the Division must follow "the common law rules applicable in determining the employee-employer relationship under 26 U.S.C. § 3306(i)." 8 C.S.R. 10–4.150(1). The Division must also consider the case law, Internal Revenue Service (IRS) regulations, and the IRS letter rulings interpreting § 3306(i). *Id.*

In Revenue Ruling 87–41, the IRS identified twenty factors to consider in classifying an individual as an employee or independent contractor, a.k.a., the "twenty-

factors test." *Quality Med. Transcription, Inc.*, 91 S.W.3d at 185. Those factors are: (1) instructions; (2) training; (3) integration; (4) services rendered personally; (5) hiring, supervising, and paying assistants; (6) continuing relationship; (7) set hours of work; (8) full time required; (9) doing work on employer's premises; (10) order or sequence set; (11) oral or written reports; (12) payment by hour, week, month; (13) payment of business and/or traveling expenses; (14) furnishing of tools and materials; (15) significant investment; (16) realization of profit or loss; (17) working for more than one firm at a time; (18) making service available to general public; (19) right to discharge; and (20) right to terminate. Rev. Rul. 87–41, 1987–1 C.B. 296.

 Missouri courts routinely apply the twenty-factor test in determining the nature of the employment relationship for purposes of tax liability. *Quality Med. Transcription, Inc.*, 91 S.W.3d at 185. The twenty factors are guides or aids in determining the nature of the employment relationship, and are not the only factors to consider. *Klausner v. Brockman*, 58 S.W.3d 671, 680 (Mo.App.2001). The twenty factors are not intended to serve as a bright-line rule with no flexibility, but rather are indices of control in determining employment status. *Id.* No single factor is conclusive, but some may be more important than others depending upon the industry and context in which the services are performed. *Quality Med. Transcription, Inc.*, 91 S.W.3d at 185. The focus of the inquiry must be the degree to which the employer has the "right to control the manner and means of performance." *Id.*

### A. Factor 1—Instructions

 1. *Instructions.* A worker who is required to comply with other persons' instructions about when, where, and how he or she is to work is ordinarily an employee. This control factor is present if the person or persons for whom the services are performed has the right to require compliance with instructions.

With respect to the "instructions" factor, the right to control is manifested in control over the "when, where and how" work is completed. *Kirksville Pub. Co. v. Div. of Emp. Sec.*, 950 S.W.2d 891, 897 (Mo.App. 1997).

### 1. Document Revision Services

As to "how," the evidence in this case is that the corporate secretary would have a stack of possible assignments, with notes attached indicating what changes were to be made in corporate manuals that needed to be revised or updated. The record indicates that the appellant did not exercise control over the manner or methodology by which those changes were made. Control over the result of Ridley's work, but not over the manner in which Ridley performed that work, favors independent contractor status. *Id.*

As to "when," the evidence is that at least some of the possible assignments had deadlines, but Ridley testified that she "never took anything that required a stringent timeline because I did have other people that I did things for." The existence of a deadline, without a requirement of specific hours to be worked, indicates control over the result of Ridley's work, but not over the manner in which Ridley performed that work, which favors independent contractor status. *Id.*

As to "where," the record indicates that the appellant did not instruct her to make the revisions at any specific location. On the contrary, Ridley testified that, when her own computer broke down, she worked on a computer in the public library, which was acceptable to the appellant. The fact that the site where Ridley worked was not

chosen by the appellant favors independent contractor status. *Fritts v. Williams*, 992 S.W.2d 375, 381 (Mo.App.1999).

### 2. Cleaning and Limousine Services

As to "how," the record indicates that the appellant did not exercise control over the manner in which those services were carried out. As to "when," the record indicates that the appellant did not exercise control over when Ridley cleaned the corporate suites, and her limousine service was obviously dictated by airport arrival times. As to "where," the nature of the work dictated that.

In light of the foregoing, the first factor, *instructions*, clearly favors independent contractor status.

### B. Factor 2—Training

2. *Training.* Training a worker by requiring an experienced employee to work with the worker, by corresponding with the worker, by requiring the worker to attend meetings, or by using other methods, indicates that the person or persons for whom the services are performed want the services performed in a particular method or manner.

The record indicates that the appellant did not train Ridley on editing or revising manuals, cleaning corporate suites, or providing limousine services. Consequently, this factor favors independent contractor status. *Fritts,* 992 S.W.2d at 381.

### C. Factor 3—Integration

3. *Integration.* Integration of the worker's services into the business operations generally shows that the worker is subject to direction and control. When the success or continuation of a business depends to an appreciable degree upon the performance of certain services, the workers who perform those services must necessarily be subject to a certain amount of control by the owner of the business.

■ The integration factor refers to whether a business could continue without the contribution of the services in question; as such, integral services are more likely to be subject to the business' control. *Kirksville Pub. Co.,* 950 S.W.2d at 898.

Here, the continuation of the appellant's business does not depend, to an appreciable degree, upon the contribution of Ridley's after-hour services. Moreover, an independent contractor is just as capable of performing the document revision, cleaning, and limousine services performed by Ridley as are employees, which cuts against a finding that Ridley's services were integrated into the business operations of the appellant. *Id.* This factor favors independent contractor status.

### D. Factor 4—Services Rendered Personally

4. *Services Rendered Personally.* If the services must be rendered personally, presumably the person or persons for whom the services are performed are interested in the methods used to accomplish the work as well as in the results.

While the record indicates that Ridley personally made all the revisions to the manuals, she also testified that, on occasion, her husband and son would handle the limousine jobs. In any event, there is no indication in the record that the appellant ever actually *required* that Ridley personally perform the assigned work, so this factor favors independent contractor status. *Quality Med. Transcription, Inc.,* 91 S.W.3d at 187.

### E. Factor 5—Hiring, Supervising, and Paying Assistants

5. *Hiring, Supervising, and Paying Assistants.* If the person or persons for

whom the services are performed hire, supervise, and pay assistants, that factor generally shows control over the workers on the job. However, if one worker hires, supervises, and pays the other assistants pursuant to a contract under which the worker agrees to provide materials and labor under which the worker is responsible only for the attainment of a result, this factor indicates an independent contractor status.

While Ridley's husband and son occasionally assisted in providing limousine services, there is nothing in the record that they were "hired," "supervised," or "paid," by either Ridley or the appellant. The appellant claims that this factor is not applicable to this case, although it is arguable that it actually favors independent contractor status. *See Stover Delivery Sys. v. Div. of Employment Sec.*, 11 S.W.3d 685, 692 (Mo.App.1999) (holding that independent contractor status is favored when the evidence establishes that the worker at issue was not precluded from subcontracting out the work).

## F. Factor 6—Continuing Relationship

6. *Continuing Relationship.* A continuing relationship between the worker and the person or persons for whom the services are performed indicates that an employer-employee relationship exists. A continuing relationship may exist where work is performed at frequently recurring although irregular intervals.

The parties agree that this factor favors employer/employee status in that in addition to performing the after-hour services, the record indicates that Ridley worked a 40–hour week as a permanent employee of the appellant.

## G. Factor 7—Set Hours of Work

7. *Set Hours of Work.* The establishment of set hours of work by the person or persons for whom the services are performed is a factor indicating control.

The parties agree that this factor favors independent contractor status in that the appellant did not set hours for the after-hour services provided by Ridley.

## H. Factor 8—Full Time Required

8. *Full Time Required.* If the worker must devote substantially full time to the business of the person or persons for whom the services are performed, such person or persons have control over the amount of time the worker spends working and impliedly restrict the worker from doing other gainful work. An independent contractor on the other hand, is free to work when and for whom he or she chooses.

Ridley testified that, in her capacity as the principal of R & L Enterprises, she spent 15 hours a week working for the appellant and 12 hours a week working for other clients. Fifteen hours a week is not "full time," so this factor favors independent contractor status. The respondent makes the specious argument that this factor favors employer/employee status because, combined with the 40 hours a week which Ridley spent in her regular employment with the appellant, she devoted a total of 55 hours a week to the appellant's business. However, logic and common sense dictate that the "full time" factor refers solely to the specific work in dispute in a particular case, which in this case constitutes 15 hours a week.

## I. Factor 9—Doing Work on Employer's Premises

9. *Doing Work on Employer's Premises.* If the work is performed on the premises of the person or persons for whom the services are performed, that factor suggests control over the worker,

especially if the work could be done elsewhere. Work done off the premises of the person or persons receiving the services, such as at the office of the worker, indicates some freedom from control. However, this fact by itself does not mean that the worker is not an employee. The importance of this factor depends on the nature of the service involved and the extent to which an employer generally would require that employees perform such services on the employer's premises. Control over the work is indicated when the person or persons for whom the services are performed have the right to compel the worker to travel a designated route, to canvass a territory within a certain time, or to work at specific places as required.

The parties agree that this factor favors independent contractor status in that the bulk of the work performed by Ridley in the revising and updating of corporate manuals was performed at home.

## J. Factor 10—Order or Sequence Set

10. *Order or Sequence Set.* If a worker must perform services in the order or sequence set by the person or persons for whom the services are performed, that factor shows that the worker is not free to follow the worker's own pattern of work but must follow the established routines and schedules of the person or persons for whom the services are performed.

The parties agree that this factor favors independent contractor status.

## K. Factor 11—Oral or Written Reports

11. *Oral or Written Reports.* A requirement that the worker submit regular or written reports to the person or persons for whom the services are performed indicates a degree of control.

There is no indication in the record that Ridley was required to submit regular or written reports to the appellant concerning her after-hour services. Consequently, this factor favors independent contractor status.

## L. Factor 12—Payment by Hour, Week, Month

12. *Payment by Hour, Week, Month.* Payment by the hour, week, or month generally points to an employer-employee relationship, provided that this method of payment is not just a convenient way of giving a lump sum agreed upon as the cost of a job. Payment made by the job or on a straight commission generally indicates that the worker is an independent contractor.

Ridley received two weekly checks from the appellant, one of which was made out to her and represented her salary for her full-time position at Memorial, and the other of which was made out to "Linda Ridley d/b/a R & L Enterprises." State and federal taxes were not withheld from the latter check. Initially, the check made out to "Linda Ridley d/b/a R & L Enterprises" was between $380 and $400 a week. Then, in 2000, the amount was increased to $525 per week. This regularity of payment favors employee status. *Quality Med. Transcription, Inc.,* 91 S.W.3d at 188–89.

## M. Factor 13—Payment of Business and/or Traveling Expenses

13. *Payment of Business and/or Traveling Expenses.* If the person or persons for whom the services are performed ordinarily pay the worker's business and/or traveling expenses, the worker is ordinarily an employee. An employer, to be able to control expenses, generally retains the right to

regulate and direct the worker's business activities.

Ridley testified that, with respect to her document revision services, she paid for her own expenses. With respect to the cleaning of the corporate suites, Ridley testified:

Q. All right. Now when you did the cleaning did anybody provide you with cleaning supplies?

A. Usually I purchased them.

Q. Were you—

A. And—

Q. Were you reimbursed?

A. Not—not always. No.

Q. Well, sometimes were you?

A. I'm trying to think. No. For—no. No.

The respondent argues that this exchange indicates that Ridley "wavered" in her testimony. However, a fair reading of the exchange indicates that she clarified her position. In any event, there is no indication in the record that the appellant used the issue of expenses to exercise control over the manner and means of her work, so this factor favors independent contractor status. *Kirksville Pub. Co.*, 950 S.W.2d at 898–99.

## N. Factor 14—Furnishing Tools and Materials

14. *Furnishing Tools and Materials.* The fact that the person or persons for whom the services are performed furnished significant tools, materials, and other equipment tends to show the existence of an employer-employee relationship.

The record indicates that Ridley furnished her own tools, materials, and other equipment, including the computer, paper and ink for the printer, which she used at home to edit and revise corporate manuals; the supplies for cleaning the corporate suites; and the vehicles used for the limousine service. This factor favors independent contractor status. *Quality Med. Transcription, Inc.*, 91 S.W.3d at 189.

## O. Factor 15—Significant Investment

15. *Significant Investment.* If the worker invests in facilities that are used by the worker in performing services and are not typically maintained by employees (such as maintenance of an office rented at fair market value from an unrelated party), that factor tends to indicate that the worker is an independent contractor. On the other hand, lack of investment in facilities indicates dependence on the person or persons for whom the services are performed for such facilities and, accordingly, the existence of an employer-employee relationship. Special scrutiny is required with respect to certain types of facilities, such as home offices.

With respect to Ridley's document revision and limousine services, she did not have any significant investment in facilities because she worked out of her home and used her own limousine. At the same time, she was not dependent on the appellant for a place to perform her services, so these circumstances are neutral, not weighing clearly in either party's favor. *Quality Med. Transcription, Inc.*, 91 S.W.3d at 189. With respect to Ridley's cleaning services, the factor is inapplicable, because the corporate suites were not being provided as a workspace for the purpose of control.

## P. Factor 16—Realization of Profit or Loss

16. *Realization of Profit or Loss.* A worker who can realize a profit or loss as a result of the worker's services (in addition to the profit or loss ordinarily realized by employees) is generally an

independent contractor, but the worker who cannot is an employee. For example, if the worker is subject to a real risk of economic loss due to significant investments or a bona fide liability for expenses, such as salary payments to unrelated employees, that factor indicates that the worker is an independent contractor.

With respect to her document production services, Ridley had no significant investments apart from computer equipment that she could also use personally, which favors employee status. *Quality Med. Transcription, Inc.*, 91 S.W.3d at 189–90. The record also indicates that, in 1999, Ridley purchased a limousine for her transportation services. However, given Ridley's testimony about the significant quantity of work that was always available to her, her potential for losses was remote, so this factor favors employee status. *Fritts*, 992 S.W.2d at 384.

## Q. Factor 17—Working for More than One Firm at a Time

17. *Working for More Than One Firm at a Time.* If a worker performs more than de minimis services for a multiple of unrelated persons or firms at the same time, that factor generally indicates that the worker is an independent contractor. However, a worker who performs services for more than one person may be an employee of each of the persons, especially where such persons are part of the same service arrangement.

The parties agree that this factor favors independent contractor status in that Ridley testified that, in doing business as R & L Enterprises, she performed services for at least five clients, and that she spent an average of 12 hours a week on these services for other clients.

## R. Factor 18—Making Services Available to General Public

18. *Making Services Available to General Public.* The fact that a worker makes his or her services available to the general public on a regular and consistent basis indicates an independent contractor relationship.

Ridley's document production and cleaning services were not advertised. However, her limousine services were advertised in a telephone directory, local publications, and on business cards. This factor does not weigh clearly in either party's favor, so we treat it as being neutral. *Quality Med. Transcription, Inc.*, 91 S.W.3d at 189.

## S. Factor 19—Right to Discharge

19. *Right to Discharge.* The right to discharge a worker is a factor indicating that the worker is an employee and the person possessing the right is an employer. An employer exercises control through the threat of dismissal, which causes the worker to obey the employer's instructions. An independent contractor, on the other hand, cannot be fired so long as the independent contractor produces a result that meets the contract specifications.

When asked whether there was a negative consequence to her if the appellant were not satisfied with the work that she did in her capacity as R & L Enterprises, Ridley replied that there was no penalty or consequence, other than the risk that she would not get additional assignments in the future. This feature of the arrangement resembles an independent contractor relationship in that an owner, if dissatisfied with a contractor's performance on one project, is free to offer no future project to the contractor. *Fritts*, 992 S.W.2d at 384–85. On the other hand, the duration of the arrangement between the ap-

pellant and Ridley in her capacity as R & L Enterprises was not tied to a particular project or to a specified period of time, a feature which resembles an employer/employee relationship. *Travelers Equities v. Div. of Emp. Sec.*, 927 S.W.2d 912, 925 (Mo.App.1996). Because conflicting conclusions can be drawn from the facts of this case, we hold this factor to be neutral. *Fritts*, 992 S.W.2d at 385.

### T. Factor 20—Right to Terminate

20. *Right to Terminate.* If the worker has the right to end his or her relationship with the person for whom the services are performed at any time he or she wishes without incurring liability, that factor indicates an employer-employee relationship.

Ridley testified that, if she received an assignment from the appellant, and either could not do it or could not find someone else to do it, there was no penalty or negative consequences. In other words, she indicated that she would not incur liability for a project left uncompleted, so this factor favors employee status. *Quality Med. Transcription, Inc.*, 91 S.W.3d at 190.

■ In this court's analysis, at least twelve factors, and arguably thirteen, clearly favor independent contractor status for Ridley's after-hours work for the appellant, while only four favor employer/employee status. The remaining three factors are either neutral or not applicable. Thus, there are three times as many factors favoring independent contractor status as there are factors favoring employer/employee status. While we are mindful that this court cannot rest its decision merely on a numerical count of factors,

*Travelers Equities*, 927 S.W.2d at 925, we, nevertheless, determine that the great weight of the evidence in the whole record favors the conclusion that Ridley was acting as an independent contractor, rather than an employee, in her after-hours work for the appellant. This is because the great weight of the evidence establishes that, while the appellant had control over the result of Ridley's work, it did not have control over the manner in which she performed that work. *Kirksville Pub. Co.*, 950 S.W.2d at 897. Accordingly, the decision of the Commission must be reversed.

■ We note that, in its decision, the Appeals Tribunal relied primarily on a finding that it was "not convinced" that Ridley's after-hours services were "any different in nature" than her full-time duties as a paralegal.[2] This finding is against the overwhelming weight of the evidence. The testimony in the record is that Ridley's after-hours services consisted of revising corporate manuals and other documents, cleaning the corporate suites and apartment, and providing limousine services. These services were distinguishable from Ridley's duties as a paralegal, which, as the respondent acknowledges in its brief, consisted of "making applications for and research of the licensing for the company's insurance agents and funeral directors, and maintaining of files for those licenses." Consequently, we need not address the question of how our analysis might change if, in fact, Ridley was doing the same work in both her full-time employment and her after-hours services.

## II.

■ In Point II, the appellant makes the same claim of error as it does in Point

---

2. In its brief, the respondent argues that "the Commission did not believe Ms. Ridley's testimony regarding the nature of the work she did at home for Appellant." However, such a claim is contradicted by the fact that the Appeals Tribunal adopted, in its findings of fact, Ridley's own description of her after-hours services for the appellant.

I, except on a different basis. Given our resolution of Point I in favor of the appellant, this point is moot. A claim of error is moot if resolution of the claim has no practical effect on the outcome of the appeal. *Cline v. Teasdale,* 142 S.W.3d 215, 224 (Mo.App.2004).

Point denied.

## Conclusion

The decision of the Commission, affirming the decision of the Appeals Tribunal, that the payments the appellant made to Ridley for performing after-hour services were wages subject to state unemployment taxes, as defined by § 288.036, is reversed.

HOWARD and HOLLIGER, JJ., concur.